**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **STACEY MICHELLE HOBSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 3:15-cv-01050** |
| **v.** | ) | |
| | ) | **Judge Trauger** |
| **NANCY BERRYHILL,**[1] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM

Pending before the court is Plaintiff Stacey Michelle Hobson's Motion for Judgment on the Administrative Record ("Motion") (Docket No. 14), filed with a Memorandum in Support (Docket No. 15). Defendant Commissioner of Social Security ("Commissioner") filed a Response in Opposition to Plaintiff's Motion (Docket No. 16). The court hereby withdraws the reference to the Magistrate Judge. Upon consideration of the parties' filings and the transcript of the administrative record (Docket No. 10),[2] and for the reasons set out herein, the Plaintiff's Motion (Docket No. 14) will be granted to the extent the case will be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum.

## I.    Introduction

Hobson filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and an application for supplemental security income ("SSI") under Title

---

[1] Nancy Berryhill became Acting Commissioner for the Social Security Administration on January 23, 2017.

[2] Referenced hereinafter by page number(s) following the abbreviation "Tr."

XVI on November 7, 2011, both alleging a disability onset of March 12, 2011. (Tr. 4.) Hobson's claim was denied at the initial and reconsideration stages of state agency review. Hobson subsequently requested *de novo* review of her case by an Administrative Law Judge ("ALJ"). Hobson appeared and testified at a hearing held on February 26, 2014. (Tr. 72–107.) At this hearing, testimony was also received from a vocational expert ("VE"). (Tr. 101–07.) The ALJ then requested a post-hearing consultative examination. (Tr. 4.) Hobson attended the exam with Dr. Terrence Leveck, and the report of that examination was proffered to Hobson's representative. (Tr. 4.) A subsequent hearing was held on May 28, 2014, due to unusual circumstances that arose regarding the VE after the February 26 hearing.[3] (Tr. 35–71.) Testimony from a different VE was received during this subsequent hearing. (Tr. 57–70.) Hobson was represented by counsel at both hearings. At the conclusion of the second hearing, the matter was taken under advisement until August 22, 2014, when the ALJ issued a written decision finding Hobson not disabled. (Tr. 1–25.) That decision contains the following enumerated findings:

1.  The claimant meets the insured status requirements of the Social Security Act through June 30, 2015.

2.  The claimant has not engaged in substantial gainful activity since March 12, 2011, the alleged onset date (20 C.F.R. 404.1571 *et seq.*, and 416.971 *et seq.*).

3.  The claimant has the following severe impairments: obesity, fibromyalgia, degenerative disc disease of the cervical spine, osteoarthritis, myopathy, hypertension, hypo-bladder, chronic fasciitis, myositis, neuropathy, and anxiety, depression, and adjustment disorder (20 C.F.R. 404.1520(c) and 416.920(c)).

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

---

[3] The details of these circumstances are discussed in the ALJ's decision. (Tr. 4–5.)

5. After careful consideration of the entire record, … the claimant has the residual functional capacity to perform sedentary work as defined in 20 C.F.R. 404.1567(a) and 416.967(a) except she can no more than occasionally lift 10 pounds, and frequently lift 5 pounds. Standing and [/] or walking are limited to two hours per day and walking will require the aid of a cane. Sitting can be performed from six to eight hours per day, and postural activities can be performed on an occasional basis with no use of ladders, no kneeling, and no crawling. The claimant can perform frequent reaching and handling. The claimant should avoid concentrated exposure to extreme temperature, vibrations, fumes, dust, gases, inhalants, and hazards. She can understand[,] remember and carry out detailed tasks and instructions, but should have no interaction with the public, occasional interaction with supervisors and coworkers and can adapt to no more than gradual and infrequent change.

6. The claimant is unable to perform any past relevant work (20 C.F.R. 404.1565 and 416.965).

7. The claimant was born on January 27, 1980 and was 31 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date (20 C.F.R. 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 C.F.R. 404.1564 and 416.964).

9. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 C.F.R. 404.1568 and 416.968).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 C.F.R. 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from March 12, 2011, through the date of this decision (20 C.F.R. 404.1520(g) and 416.920(g)).

(Tr. 7, 9, 17–19.)

On July 31, 2015, the Appeals Council denied Hobson's request for review of the ALJ's decision (Tr. 26–31), thereby rendering that decision the final decision of the SSA. This civil action was thereafter timely filed, and the court has jurisdiction. 42 U.S.C. § 405(g).

## II.    Review of the Record

Despite having a duty to do so, Hobson has failed to provide a sufficient summary of the medical record.  The Commissioner has adopted the facts as set forth by the ALJ, which, as discussed below, the court finds to also be inadequate.  In light of these unique circumstances, and considering the substantial size of the record, the court will instead refer to the relevant medical record evidence in its analysis.

## III.    Conclusions of Law

### A.  Standard of Review

Judicial review of "any final decision of the Commissioner of Social Security made after a hearing" is authorized under section 205(g) of the Social Security Act, which empowers the district court "to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."  42 U.S.C. § 405(g).  This court reviews the final decision of the Commissioner to determine whether substantial evidence supports that agency's findings and whether it applied the correct legal standards.  *Miller v. Comm'r of Soc. Sec.*, 811 F.3d 825, 833 (6th Cir. 2016).  Substantial evidence means "'more than a mere scintilla' but less than a preponderance; substantial evidence is such 'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)).  In determining whether substantial evidence supports the agency's findings, a court must examine the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight."  *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 641 (6th Cir. 2013) (quoting *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984)).  The agency's decision must stand if substantial evidence supports it, even if the record contains evidence supporting the

opposite conclusion.  *See Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 473 (6th Cir. 2016) (citing *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)).

Accordingly, this court may not "try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility."  *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (quoting *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007)).  Where, however, an ALJ fails to follow agency rules and regulations, the decision lacks the support of substantial evidence, "even where the conclusion of the ALJ may be justified based upon the record."  *Miller*, 811 F.3d at 833 (quoting *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014)).

## B.  The Five-Step Inquiry

The claimant bears the ultimate burden of establishing entitlement to benefits by proving his or her "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The claimant's "physical or mental impairment" must "result[] from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  *Id.* § 423(d)(3).  The agency considers a claimant's case under a five-step sequential evaluation process, described by the Sixth Circuit Court of Appeals as follows:

1.  A claimant who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2.  A claimant who does not have a severe impairment will not be found to be disabled.

3.  A finding of disability will be made without consideration of vocational factors, if a claimant is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to

Subpart B of the Regulations. Claimants with lesser impairments proceed to step four.

4. A claimant who can perform work that he has done in the past will not be found to be disabled.

5. If a claimant cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

*Parks v. Soc. Sec. Admin.*, 413 F. App'x 856, 862 (6th Cir. 2011) (citing *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007)); 20 C.F.R. §§ 404.1520, 416.920. The claimant bears the burden through step four of proving the existence and severity of the limitations her impairments cause and the fact that she cannot perform past relevant work; however, at step five, "the burden shifts to the Commissioner to 'identify a significant number of jobs in the economy that accommodate the claimant's residual functioning capacity[.]" *Kepke v. Comm'r of Soc. Sec.*, 636 F. App'x 625, 628 (6th Cir. 2016) (quoting *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004)).

The agency can carry its burden at the fifth step of the evaluation process by relying on the Medical-Vocational Guidelines, otherwise known as "the grids," but only if a nonexertional impairment does not significantly limit the claimant, and then only when the claimant's characteristics precisely match the characteristics of the applicable grid rule. *See Anderson v. Comm'r of Soc. Sec.*, 406 F. App'x 32, 35 (6th Cir. 2010); *Wright v. Massanari*, 321 F.3d 611, 615–16 (6th Cir. 2003). Otherwise, the grids only function as a guide to the disability determination. *Wright*, 321 F.3d at 615–16; *see Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990). Where the grids do not direct a conclusion as to the claimant's disability, the agency must rebut the claimant's prima facie case by coming forward with proof of the claimant's individual vocational qualifications to perform specific jobs, typically through vocational expert

testimony. *Anderson*, 406 F. App'x at 35; *see Wright*, 321 F.3d at 616 (quoting SSR 83-12, 1983 WL 31253, *4 (Jan. 1, 1983)).

When determining a claimant's residual functional capacity ("RFC") at steps four and five, the agency must consider the combined effect of all the claimant's impairments, mental and physical, exertional and nonexertional, severe and nonsevere. *See* 42 U.S.C. §§ 423(d)(2)(B), (5)(B); *Glenn v. Comm'r of Soc. Sec.*, 763 F.3d 494, 499 (6th Cir. 2014) (citing 20 C.F.R. § 404.1545(e)).

## C.  Plaintiff's Statement of Errors

### 1.  *Severe Impairments*

Hobson's first argument is that the ALJ erred by failing to properly consider each of her severe impairments.  At step two of the sequential evaluation process, "the ALJ must find that the claimant has a severe impairment or impairments" to be disabled.  *Farris v. Sec'y of Health & Human Servs.*, 773 F.2d 85, 88 (6th Cir. 1985); see 20 C.F.R. § 404.1520(a)(4)(h).  "[A]n impairment is considered 'severe' unless 'the [claimant's] impairment(s) has no more than a minimal effect on his or her physical or mental ability(ies) to perform basic work activities."  *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 324 (6th Cir. 2015) (quoting SSR 85-28).  As such, "the claimant's burden of establishing a 'severe' impairment during the second step of the disability determination process is a '*de minimis* hurdle.'"  *Id.* at 324–25 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)).  "Under [this] prevailing *de minimis* view, an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience."  *Id.* at 325 (quoting *Higgs*, 880 F.2d at 862).

"[O]nce any one impairment is found to be severe, the ALJ must consider both severe and nonsevere impairments in the subsequent steps." *McGlothin v. Comm'r of Soc. Sec.*, 299 F. App'x 516, 522 (6th Cir. 2008) (citing *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008)); 20 C.F.R. § 416.945(a)(2). Therefore, it is "legally irrelevant" that an impairment was determined to be nonsevere if the ALJ finds other severe impairments. *See McGlothin*, 299 F. App'x at 522 (reasoning that "because the ALJ found that [plaintiff] has some severe impairments, he proceeded to complete steps three through five of the analysis. It then became 'legally irrelevant' that her other impairments were determined to be not severe.") (quoting *Higgs*, 880 F.2d at 862). As explained by the Sixth Circuit,

> [a]n ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ determines that a claimant has at least one other severe impairment and continues with the remaining steps of the disability evaluation. This rule is predicated on the notion that the ALJ "properly could consider claimant's [non-severe impairments] in determining whether claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity."

*Winn*, 615 F. App'x at 326 (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)); *see also Fisk v. Astrue*, 253 F. App'x 580, 583 (6th Cir. 2007) (holding that an ALJ's failure to find an impairment severe at step two is not reversible error, if the ALJ "considers all of a claimant's impairments in the remaining steps of the disability determination."); 20 C.F.R. § 404.1523 (stating that, when making a disability determination, the Regulations require that, if one severe impairment exists, the Commissioner "will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity.").

In the present case, the ALJ found that Hobson had severe obesity, fibromyalgia, degenerative disc disease of the cervical spine, osteoarthritis, myopathy, hypertension, hypo-bladder, chronic fasciitis, myositis, neuropathy, anxiety, depression, and adjustment disorder impairments during the relevant period. (Tr. 7.) Hobson claims that her lumbar spine disorder, right sciatica, and tremors of the hands should also have been found to be severe. (Docket No. 15, p. 7.) Even assuming Hobson is correct, the court finds that any error in this regard was harmless. The ALJ found thirteen conditions constituted severe impairments and then continued on with the disability analysis. (*See* Tr. 7.) Thus, Hobson succeeded at step two. Further, the ALJ considered both her severe and nonsevere impairments when determining her RFC, as evidenced by his discussion of her lower back pain, right sciatica, and hand tremors. (Tr. 10–14.) The court also notes that Hobson does not argue which, if any, additional functional limitations would have been supported by the record. Therefore, Hobson's claim of reversible error fails, since it is "legally irrelevant" that the ALJ classified these impairments as nonsevere.

Hobson also claims that the ALJ failed to properly discuss how obesity affects her ability to work, as allegedly required by SSR 02-1p. (Docket No. 15, pp. 9–10.) However, her reliance on SSR 02-01p is misplaced. SSR 02-01p explains the Administration's policy on the evaluation of obesity. The ruling serves to "remind adjudicators to consider [obesity's] effects when evaluating disability." SSR 02-01p. According to the Sixth Circuit,

> Social Security Ruling 02-01p does not mandate a particular mode of analysis. It only states that obesity, in combination with other impairments "may" increase the severity of other limitations. It is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular mode of analysis for obese disability claimants.

*Bledsoe v. Barnhart*, 165 F. App'x 408, 411–12 (6th Cir. 2006).

Here, the ALJ properly accounted for the effects that obesity has on Hobson's ability to perform sedentary work. He found her obesity to be a severe impairment. (Tr. 7.) Hobson has offered no evidence or argument that a restriction resulting from her obesity required greater limitations than those found by the ALJ in his assessment. *See Lyons v. Astrue*, No. 3:10-cv-502, 2012 WL 529587, at *4 (E.D. Tenn. Feb. 17, 2012) (noting that "plaintiff has not offered any evidence or argument, either in her objection or her initial motion, that a restriction resulting from her obesity required greater limitations than those found by the ALJ in his RFC determination."). The court finds that the ALJ sufficiently accounted for the impact that Hobson's obesity has on her ability to perform sedentary work.

### 2. *Treating Physician Rule*

Hobson's next two arguments are that the ALJ erred by failing to give controlling weight to the opinions of her treating physicians, Dr. Clarissa Arthur and Dr. Hemal Mehta,[4] as well as failing to provide good reasons for doing so and that the ALJ failed to properly consider the opinion of the consultative examiner, Dr. Terrence Leveck. (Docket No. 15, pp. 10–14.) The Commissioner disagrees, arguing that the ALJ's assignment of weight was supported by substantial evidence and comports with applicable law. (Docket No. 16, pp. 7–12.)

The administrative regulations implementing the Social Security Act impose standards on the weighing of medical source evidence. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011). The significant deference accorded to the Commissioner's decision is conditioned on the ALJ's adherence to these governing standards. In *Gentry v. Commissioner of Social Security*, the Sixth

---

[4] The Commissioner has not contested that Drs. Arthur and Mehta are Hobson's treating physicians, as so defined in 20 C.F.R. § 416.902.

Circuit re-stated the responsibilities of the ALJ in assessing medical evidence in the record in

light of the treating source rule:

> Chief among these is the rule that the ALJ must consider all
> evidence in the record when making a determination, including all
> objective medical evidence, medical signs, and laboratory findings.
> 20 C.F.R. § 404.1520(a)(3); 20 C.F.R. § 404.1512(b); 20 C.F.R. §
> 404.1513. The second is known as the "treating physician rule,"
> *see Rogers*, 486 F.3d at 242, requiring the ALJ to give controlling
> weight to a treating physician's opinion as to the nature and
> severity of the claimant's condition as long as it "is well-supported
> by medically acceptable clinical and laboratory diagnostic
> techniques and is not inconsistent with the other substantial
> evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2)
> (language moved to 20 C.F.R. § 404.1527(c)(2) on March 26,
> 2012). The premise of the rule is that treating physicians have the
> best detailed and longitudinal perspective on a claimant's condition
> and impairments and this perspective "cannot be obtained from
> objective medical findings alone." 20 C.F.R. § 416.927(d)(2)
> (language moved to 20 C.F.R. § 416.927(c)(2) on March 26,
> 2012). Even when not controlling, however, the ALJ must
> consider certain factors, including the length, frequency, nature,
> and extent of the treatment relationship; the supportability of the
> physician's conclusions; the specialization of the physician; and
> any other relevant factors. *Rogers*, 486 F.3d at 242. In all cases,
> the treating physician's opinion is entitled to great deference even
> if not controlling. *Id.* The failure to comply with the agency's
> rules warrants a remand unless it is harmless error. *See Wilson*,
> 378 F.3d at 545–46.

741 F.3d 708, 723 (6th Cir. 2014).

The Sixth Circuit has also made clear that an ALJ may not determine the RFC by failing

to address portions of the relevant medical record or by selectively parsing that record—*i.e.*,

"cherry-picking" it—to avoid analyzing all of the relevant evidence. *Id.* at 724 (citing *Minor v.

Comm'r of Soc. Sec.*, 513 F. App'x 417, 435 (6th Cir. 2013) (reversing where the ALJ "cherry-

picked select portions of the record" rather than doing a proper analysis); *Germany-Johnson v.

Comm'r of Soc. Sec.*, 313 F. App'x 771, 777 (6th Cir. 2008) (finding error where the ALJ was

"selective in parsing the various medical reports.")). This is particularly so when the evidence ignored is from a treating physician. Ignoring medical evidence from a treating source in fashioning the RFC, without a proper analysis of why such action is taken, cannot be harmless error because it "undermines [the ALJ's] decision" to overlook evidence that could have potentially supported a more restrictive RFC or even a finding of disability. *Gentry*, 741 F.3d at 729 (citations omitted); *Grubbs v. Comm'r of Soc. Sec.*, No. 12–14621, 2014 WL 1304716, at *2 (E.D. Mich. Mar. 31, 2014) ("The absence of a review of treatment records from a treating source and the lack of analysis of such made it impossible for the ALJ to properly assess whether the Plaintiff was disabled and/or whether Plaintiff had the residual functional capacity to do any work.").

<u>Kristina Greene</u>

In the present case, the ALJ relied heavily upon the opinion of Kristina Greene, a physician's assistant at Comprehensive Rheumatology Care who routinely saw Hobson. (Tr. 14.) In assigning "great weight" to Ms. Greene's opinion, the ALJ stated:

> [Greene] specializes in rheumatology care and has been the claimant's primary health care provider regarding her musculoskeletal issues. A letter received from Ms. Greene PA-C of Comprehensive Rheumatology stated that the claimant was being treated for chronic fasciitis and may require more frequent breaks at work if she is standing or doing physical activity for long periods. However, she indicated that sedentary activity would be possible (Exhibit 19F, pg. 4). This opinion indicates that the claimant does not need frequent breaks to perform sedentary tasks. This assessment is consistent with the treatment records as a whole.

(Tr. 14.) The letter referenced by the ALJ is the last in a series of four that Greene wrote on Hobson's behalf. The first states that Hobson is being treated for myositis and discusses its traits and symptoms (Tr. 494); the second does the same for seronegative rheumatoid arthritis (Tr.

495); and the third does the same for fibromyalgia and polyarthralgia (Tr. 496).  The last letter

reads, in relevant part:

> [Hobson] suffers from chronic fasciitis.  Her diagnosis was
> determined after several lab tests showed elevated CPK enzymes.
> A muscle biopsy confirmed her diagnosis of myositis.  [Hobson] is
> on prednisone and this is a long term condition that will require
> lifelong treatment.  She has weakness in her muscles in both her
> upper and lower extremities but her legs are affected the most.  Her
> disease also causes fatigue.  She may require more frequent breaks
> at work if she is standing or doing physical activity for long
> periods of time.  *Sedentary activity would be better for her
> myalgias.*

(Tr. 497 (emphasis added).)  The ALJ used his assessment of Greene's opinion to discount the

portions of Dr. Arthur and Dr. Mehta's opinions, which he believed to be inconsistent.  However,

there are issues with this.

As a preliminary matter, Greene, as a physician's assistant, is not an acceptable medical

source.  *See* SSR 06-03p; *Hollingsworth v. Astrue*, No. 1:09-cv-0031, 2010 WL 2901830, at *3

(M.D. Tenn. July 15, 2010).  An ALJ may use evidence from unacceptable medical sources to

show the severity of a claimant's impairment and how it affects her ability to function.

However, unlike acceptable medical sources, information from unacceptable medical sources

cannot establish the existence of a medically determinable impairment, give medical opinions, or

be considered treating sources whose medical opinions may be entitled to controlling weight.

SSR 06-03p.

Greene's statement regarding "sedentary activity" is simply a broad, general

recommendation—not a medical opinion that Hobson can perform the exertional demands of

sedentary work.  It is important to note that "sedentary work" is a legal term of art with a specific

definition[5], and the task of determining whether a claimant is capable of such work is reserved exclusively for the ALJ. *Poe v. Comm'r of Soc. Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1546(c), 416.946(c)) ("The responsibility for determining a claimant's residual functional capacity rests with the ALJ, not a physician.").  Greene's letter neither provides examples of what "sedentary activity" would constitute, nor does it contain any opinion regarding Hobson's functional abilities, such as whether Hobson would be able to sit for an extended duration.  In addition, Greene's opinion regarding sedentary activity only referred to Hobson's "myalgias."  Notably, the ALJ found that Hobson suffers from thirteen distinct severe impairments.  Despite this, the ALJ overstates selected portions of Ms. Greene's letter and relies upon it as though it establishes that Hobson is capable of "sedentary work" as defined in the regulations.  For example, the ALJ paraphrased Ms. Greene's final sentence at least twice, stating "the opinion of Ms. Green[e] that the claimant can sustain sedentary functionality," or "the opinion of Ms. Greene … that [Hobson] can perform sedentary duties."  (Tr. 15.)  Overall, the ALJ's reliance upon and mischaracterization of Greene's statements as establishing Hobson's ability to perform sedentary work is not substantially supported and is erroneous, insofar as the ALJ utilized two general statements of limited scope from one of Greene's letters to discredit opinions from Hobson's treating physicians, Drs. Arthur and Mehta, and from her consultative examiner, Dr. Leveck.

---

[5] "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

## Dr. Clarissa Arthur

Dr. Arthur was Hobson's primary care physician. In partially discounting her opinion, the ALJ stated:

> Dr. Clarissa Arthur provided an assessment of the claimant's ability to do work related activities (Exhibit 14-F). Her opinion is found to be overly restrictive. She limited the claimant to never stooping, crouching, or climbing stairs. She also indicated that the claimant needs to lie down for two hours in an eight-hour day, or change position at will. As with Ms. Greene's assessment, these limitations appear to relate only toward the claimant's ability to stand and walk for extended durations. This conclusion is strongly supported [by] Dr. Arthur's assessment that the claimant has an unlimited ability to sit. It is also supported by the fact that Dr. Arthur's explanation of the claimant's limitations focused primarily on her difficulty to get into a kneeling position and to stand thereafter and her occasional use of a cane to ambulate.

> Dr. Clarissa Arthur opined that the claimant has no sitting limitations and has no handling or feeling limitations. These assessments are given great weight because they are consistent with the opinion of Ms. Greene that the claimant can sustain sedentary functionality. The other limitations regarding lifting and the need for extended breaks and absences all appear to relate to the claimant's standing and walking limitations, not her unlimited ability to sit. As a result, these limitations are given no weight in relation to the claimant's ability to perform sedentary work from a sitting position.

(Tr. 15.) This is insufficient.

The ALJ's explanation does not comport with the procedural requirements of § 1527(c)(2); namely, he did not apply the requisite § 1527(c)(2) factors, such as the length of the treatment relationship and frequency of examination or the nature and extent of the treatment relationship. This leaves out crucial information, such as the fact that Dr. Arthur was Hobson's primary care physician and treated her regularly for at least two years. The only factors the ALJ

seemed to consider were the overall consistency of her opinion with her own treatment records and the record as a whole. However, there are issues with the ALJ's analysis here as well.

For example, the ALJ's assertion that Dr. Arthur opined that Hobson has an unlimited ability to sit is misleading, due to a lack of context. Dr. Arthur did in fact opine that Hobson had no limit in her ability to sit with normal breaks during an eight-hour day. (Tr. 418.) However, under the next question, which referred to patients who must periodically alternate sitting, standing, or walking to relieve discomfort, Dr. Arthur stated that Hobson could only sit for 30–45 minutes before changing positions; could stand for 15–20 minutes before changing positions; must walk around every 5–10 minutes for 5 minutes; and needs the opportunity to shift at will from sitting or standing/walking. (Tr. 418.) Dr. Arthur's opinion also notes that Hobson often needs to lie down at unpredictable intervals, at least 2–3 hours of an 8 hour shift; that Hobson should never twist, stoop, crouch, climb stairs, or climb ladders; and that she will be absent more than four days a month due to her impairments. (Tr. 418–19.) Inexplicably, the ALJ categorized three of these restrictions (*i.e.*, never performing postural activities, needing to lie down for two hours in an eight hour shift, and change positions at will) as pertaining "only to [Hobson's] ability to stand and walk for extended durations" and thus gave them no weight. (Tr. 15.)

It is concerning that the ALJ concluded that Dr. Arthur meant Hobson's ability to sit was unlimited, without mentioning the severe restrictions Dr. Arthur included, in the very next section, which would directly limit Hobson's ability to sit without interruption. In fact, the limitations Dr. Arthur placed on Hobson's physical activity precluded sedentary work under Social Security guidelines and Sixth Circuit case law, which has repeatedly held that sedentary work requires the ability to sit for extended periods of time and is precluded by an impairment, or combination of impairments, which require the claimant to alternate frequently between

16

sitting and standing. *See, e.g.*, *Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815, 819 (6th Cir. 1988); *Wages v. Sec'y of Health & Human Servs.*, 755 F.2d 495, 497–499 (6th Cir. 1985). It is clear from Dr. Arthur's restrictions that Hobson could not maintain any one position (e.g., sitting or standing) for any significant length of time; she has to be able to move about as needed. As stated in *Wages*, "[t]he concept of sedentary work contemplates substantial sitting as well as some standing and walking. Alternating between sitting and standing, however, may not be within the definition of sedentary work." *Wages*, 755 F.2d at 498; *accord*, *Howse v. Heckler*, 782 F.2d 626, 628 (6th Cir. 1986); *see also* SSR 83-10, 83-12. Indeed, a number of Dr. Arthur's restrictions would preclude Hobson from being able to perform sedentary work, such as her frequent absences due to her impairments and her manual dexterity related limitations[6]. Yet, the ALJ does not acknowledge this limitation either. Such selective parsing of the opinion, particularly when combined with the lack of analysis of the relevant portions of the record and failure to properly apply the requisite factors, illustrates the lack of substantial evidence supporting the ALJ's decision. Therefore, the court finds that the ALJ violated the treating physician rule with respect to Dr. Arthur.

## Dr. Hemal Mehta

With respect to the opinion of Hobson's second treating physician, Dr. Hemal Mehta, the ALJ stated:

> In regards to the claimant's physical conditions, Dr. Hermal [sic] Mehta provided a medical opinion of the claimant's ability to do work related activity. His opinion is given no weight. He opined that the maximum amount the claimant could lift is less than ten

---

[6] In *Faison v. Sec'y of Health & Human Servs.*, 679 F.2d 598, 599 (6th Cir. 1982), the court took judicial notice that sedentary jobs, while requiring less strength than other jobs, also require more manual dexterity and speed than other jobs. Additionally, one of the vocational experts testified that a claimant who was only capable of occasional handling and fingering would be unable to perform sedentary work. (Tr. 61.)

pounds and that she could sit for three hours in an eight-hour day. This is inconsistent with the opinion of Dr. Arthur who states the claimant has no limit in her ability to sit (Exhibit 14-F). It is also inconsistent with the opinion of the consultative examiner Dr. Thomas [sic] Leveck who opines that the claimant is capable of sitting for eight hours in an eight-hour day. It is further inconsistent with the opinion of Ms. Greene, the claimant's primary care provider, that she can perform sedentary duties.

Dr. Hermal [sic] Mehta provided additional limitations and he stated that his support for these limitations was the diagnosis of rheumatoid arthritis with chronic pain. Although the claimant has been diagnosed with rheumatoid arthritis and has pain in multiple joints, the diagnosis itself does not provide sufficient support for the severity of limitations he has expressed. Moreover, his opinions are also inconsistent with the claimant's own reports in her Mental Health Questionnaires (Exhibit 9-F, 18-F, and 30-F).

(Tr. 15.) The ALJ's decision to accord zero weight to Dr. Mehta's opinion violates the treating physician rule.

First, even assuming that the ALJ properly declined to give Dr. Mehta's opinion controlling weight, he failed to give "good reasons" for giving the opinion "no weight." Namely, he did not balance § 1527(c)(2)'s requisite factors, such as the length of the treatment relationship and frequency of the examination, the nature and extent of the treatment relationship, and specialization of the treating source. The only factors that the ALJ did seem to consider were the consistency of the opinion with the record. However, there are issues with the ALJ's analysis here as well. The ALJ stated that Dr. Mehta's opinion that the maximum weight Hobson could lift was less than ten pounds and that she could only sit for three hours in an eight-hour day was inconsistent with Dr. Arthur's opinion that Hobson has no limit in her ability to sit. (Tr. 15.) As discussed above, the ALJ's oversimplified and cherry-picked interpretation of Dr. Arthur's opinion does not accurately reflect the content of the opinion. Furthermore, the ALJ's contention of inconsistency is undercut because it does not account for any of the consistencies.

To the contrary, a comparison of the two opinions shows that they are substantially similar. For example, both doctors opined that the maximum weight Hobson could lift was less than ten pounds; her maximum ability to stand was about two hours or less; her ability to reach, handle, finger, and push/pull were all affected by her impairments; and she would miss work more than four days per month due to her impairments. (Tr. 418–19, 708–10.)

It is also notable that, although the ALJ chose to discount the entirety of Dr. Mehta's opinion, some of Dr. Mehta's findings are unmistakably present among the various limitations identified by the ALJ in determining Hobson's RFC. For instance, the ALJ states in his RFC finding that "postural activities can be performed on an occasional basis with no use of ladders, no kneeling, and no crawling." (Tr. 9.) Dr. Arthur opined that Hobson could *never* perform any of the postural activities, yet Dr. Mehta opined that she could occasionally twist or stoop, but never crouch or climb ladders or stairs. (Tr. 419, 709.) Both doctors recommended that she never kneel. (Tr. 419, 709.) The ALJ provides no rationale for why he chose to implicitly adopt portions of Dr. Mehta's opinion after allocating it no weight. Overall, the ALJ's rationale for discounting Dr. Mehta's opinion based on its alleged inconsistency with the opinion of Dr. Arthur is flawed.

Similarly, the ALJ erred by discounting Dr. Mehta's opinion on the grounds that it was "inconsistent with the opinion of the consultative examiner Dr. Thomas [sic] Leveck who opines that the claimant is capable of sitting for eight hours in an eight-hour day." (Tr. 15.) As a threshold matter, the ALJ accorded little weight to Dr. Leveck's opinion; therefore, it is odd that the ALJ would use it to discount Dr. Mehta's opinion. The ALJ also failed to account for the numerous consistencies between the opinions. For example, Dr. Leveck and Dr. Mehta (as well as Dr. Arthur) both opine that the maximum weight Hobson could lift was less than ten pounds;

that Hobson would have issues with reaching and pushing/pulling; and that she should never kneel, balance, crawl, or climb stairs or ladders. (Tr. 708–10, 828–33.) Moreover, the Sixth Circuit has repeatedly held that the opinions of a treating physician are generally entitled to greater weight than the contrary opinions of a consulting physician who has examined the claimant on only a single occasion. *Rogers v. Commissioner*, 486 F.3d 234, 242 (6th Cir. 2007).

In addition, as stated above, it was improper to discount Dr. Mehta's opinion on the ground that it was inconsistent with the opinion of Greene, a nonacceptable medical source, that Hobson "can perform sedentary duties." It is also notable that Dr. Mehta's opinion is dated December 20, 2013, almost a full year after Ms. Greene's November 29, 2012 opinion (Tr. 710)—a fact which the ALJ neglects to mention in his analysis.

Aside from the inconsistencies with other opinions, as discussed above, the ALJ also discounted Dr. Mehta's opinion on the grounds that the diagnosis of rheumatoid arthritis itself was insufficient to support the severity of limitations. Yet he failed to properly address the treatment records, which consistently documented symptoms such as persistent multiple joint and muscle pain, decreased range of motion, and swelling in her hands. (Tr. 672, 678, 683, 700, 703, 706.) The ALJ finally stated that Dr. Mehta's opinion was inconsistent with Hobson's reports in her Mental Health Questionnaires, but after reviewing the Questionnaires, the court was unable to find any such inconsistencies. Rather, Hobson consistently reported difficulties with most of her daily activities, such as walking, dressing, and participating in recreational sports. (E.g., Tr. 382, 385, 388, 391.) Finally, the ALJ did not appear to acknowledge Dr. Mehta as a treating physician, let alone discuss his specialty (pain management), how long he had been treating Hobson (since April 2013), or how frequent her visits were (monthly).

In light of the substantial defects in the ALJ's decision identified above, the court is not persuaded by the remaining justifications offered by the Commissioner in support of its argument that the ALJ properly evaluated Dr. Arthur and Dr. Mehta's opinions. It is disturbing that the ALJ appears to only reference evidence in the record that supports one outcome: a finding that Hobson is not disabled. Because the ALJ failed to follow procedural regulations designed to protect Hobson, the court does not find this procedural failure to be a harmless error and thus reverses the ALJ's decision. *See McLean v. Comm'r of Soc. Sec.*, 360 F. Supp. 2d 864, 872 (E.D. Mich. 2005) (citing *Wilson*, 378 F.3d at 547–48) ("The error is not harmless when the reviewing court is hampered by the lack of explanation and the rejected evidence could very well establish disability, as here.").

Hobson also argues that the ALJ erred in his weighing of Dr. Leveck's opinion. (Docket No. 15, pp. 14–16.) The ALJ stated that he accorded little weight to Dr. Leveck's opinion in part because of its inconsistencies with the opinions of other treating professionals—specifically, the opinions of Dr. Arthur and Greene. (Tr. 16.) Since the court finds that the ALJ's analysis violated the treating physician rule, it is not necessary to address this argument, or Hobson's other remaining arguments, because even if the assignment of error had merit, the result would be the same, *i.e.*, remand for further proceedings. *See Mays v. Comm'r of Soc. Sec.*, No. 1:14-cv-647, 2015 WL 4755203, at *13 (S.D. Ohio Aug. 11, 2015) (Report and Recommendation) (Litkovitz, M.J.), *adopted*, 2015 WL 5162479 (S.D. Ohio Sept. 3, 2015).

## IV.    Conclusion

For the reasons stated herein, Plaintiff's Motion for Judgment on the Record (Docket No. 14) will be granted and an appropriate Order entered.

ENTER this 31st day of July 2017.

_____
ALETA A. TRAUGER
UNITED STATES DISTRICT JUDGE